UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:22-CR-70-MTS-NCC |
| | ) | |
| DAVID ROCKLAGE-DOMPIERRE, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM, REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

The above matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b).

On December 2, 2024, Defendant filed a motion to suppress evidence (ECF No. 66). On January 21, 2025, the Government filed its response (ECF No. 71). On August 6, 2025, the undersigned held an evidentiary hearing, and the transcript of that hearing was filed on August 19, 2025 (ECF No. 91)

Based on the evidence, testimony adduced, arguments of counsel, as well as a review of the transcript of the hearing in this matter, and after having had an opportunity to evaluate the credibility of the witnesses and observe their behavior, the undersigned makes the following findings of fact and conclusions of law.

### BACKGROUND[1]

---

[1] The parties described a dispute regarding the quantities of narcotics for which defendant Rocklage-Dompierre might be responsible in this case. According to counsel, one of the responding police officers with the Saint Louis Metropolitan Police Department (SLMPD) to the crash scene retrieved baggies of possible narcotics and a needle from a bystander who stated that he saw the contraband on the ground after defendant Rocklage-Dompierre crashed his motorcycle on South Broadway. Charles Gelardi, Jr., the bystander, was employed at Bates Street Motors near the scene and testified for the defense at the

On September 15, 2021, SLMPD Officer Matthew Gregston was working day patrol in a marked Tahoe in the Mount Pleasant and Carondelet/Patch neighborhoods within District One in Saint Louis City. It was a bright, clear day. Officer Gregston was a seven-year veteran police officer at the time of his testimony in this case. He and his partner Officer Eldin Dedakovic, both of whom testified for the Government at the hearing, knew that motorcycle owners in this area frequently reported their theft. Officer Gregston was aware that stolen motorcycles were often operated without license plates and recovered motorcycles were often spray-painted different colors than the original paint job.

While driving southbound on Broadway near Primm, at around 2:17 p.m., Officer Gregston saw a person operating a "badly" spray-painted green motorcycle with no license plates traveling east on Primm. He described the motorcycle as a street bike. The driver was not speeding as he turned northbound on Broadway in front of the patrol vehicle, driven by Officer Dedakovic. The officers pursued with sirens after making a U-turn on Broadway to attempt a traffic stop. The patrol vehicle's dash camera was in operation. The driver of the motorcycle accelerated and fled away.

South Broadway has one primary driving lane northbound and southbound with a center lane in between for turning. The driver entered the center lane of Broadway and continued to

---

hearing before the undersigned. The AUSA proffered that Mr. Gelardi retrieved the contraband from the ground, took the items to the shop and later gave the items to a SLMPD officer at the scene. An officer then placed the items inside a bag (possibly a backpack), worn by Rocklage-Dompierre at the crash site. Other contraband was found inside a coin purse. The parties do not dispute that SLMPD officers neither prepared a supplemental police report nor obtained a lab report about the contraband found by Mr. Gelardi. Defendant argues that the Government cannot establish a proper evidentiary chain of custody regarding those items and his possession.

Evidentiary challenges about the chain of custody are better addressed before the trial judge in addition to the parties' arguments concerning the possible total quantity of narcotics possessed in this case. Accordingly, the undersigned will limit this Report and Recommendation to the facts established at the hearing and conclusions of law that are responsive to Defendant's pretrial motion to suppress.

drive north, which is a roadway frequented by semi-vehicles and heavy pedestrian traffic. Driving in the center lane is a traffic violation. The officers followed the motorcycle into the center lane to avoid the passenger cars traveling within the speed limit. Officers decided to disengage rather than to continue a risky pursuit in the surrounding conditions. They broadcast a description of the motorcycle over the police radio, and they continued northbound on South Broadway. Approximately one- to two-minutes after the initial pursuit, they heard from police dispatch and saw that the motorcycle had crashed in front of a business at 5527 South Broadway near the intersection of Bates. The motorcycle had sideswiped a vehicle making a westbound turn onto Bates. Several witnesses were present, including a woman who said she had been a nurse, and she thought the defendant suffered a head and wrist injury. The damaged street bike was on its side in the street and the driver, identified later to be defendant Rocklage-Dompierre, was seated on the ground, leaning his body to the right between the curb the sidewalk. He was injured and wearing a backpack.[2]

    The two officers approached on foot wearing body cameras. Witnesses called out to them about the crash. Other officers responded, including SLMPD Officers Blackmon[3] and Dondrell Harris, who were partners. Officers observed that Rocklage-Dompierre seemed to be disoriented, yelling out in pain and holding his midsection. Officer Dedakovic observed the defendant to be bleeding from his head and that he had a probable broken arm or wrist. Officer Dedakovic testified that Rocklage-Dompierre was sitting on the curb, and he recognized the green motorcycle without license plates as the one they pursued just minutes earlier.

    Rocklage-Dompierre was wearing a backpack, which an officer attempted to remove to

---

[2] The witness and the parties alternatively refer to the backpack as a body bag, bookbag, satchel and crossbody bag. I have also referred to the bag worn by the defendant as a backpack or body bag.

[3] First name not given at the hearing.

make an arrest for felony fleeing and resisting.  Officer Gregston and at least one other officer believed the defendant might be "blading [the right side] of his body," which can signify an effort by a person to block officers from seeing something.  Officer Gregston also noted that Defendant's unusual body positioning could be due to the accident.  Officer Gregston planned an immediate arrest, seizure and search of the defendant's backpack and all other property.

As officers gathered at the scene approximately one to two minutes into the encounter, Officer Gregston heard that Officer Blackmon saw a firearm on the defendant's right side, tucked into his waistband.  Officer Blackmon yelled "firearm."  Officers attempted to retrieve the firearm and Rocklage-Dompierre resisted.  They scuffled and pulled on the defendant, who reacted by biting Officer Dedakovic's forearm and causing it to bleed.  An officer deployed a taser and the defendant continued to move on the ground.  Officer Dedakovic handcuffed and lifted the defendant to a sitting position.  Officers directed him to walk to a nearby entryway at the front of a residence next to the auto shop.  They had him sit on the walkway stairs leading to the house.  These actions allowed officers to take control of the situation and cut the body bag off his upper body.  No officer told the defendant what offense prompted his arrest.

Officer Gregston believed that the backpack may have opened partially during these events.  Officer Dedakovic moved the backpack to the patrol car to complete a search.  He opened zippered compartments and searched the contents, including a coin purse that contained a clear plastic bag of narcotics.  Officers also checked on the defendant's medical condition regarding possible head and wrist injuries and called emergency medical services.

Rocklage-Dompierre called two witnesses to testify at the hearing, including SLMPD Officer Dondrell Harris and Mr. Gelardi.  Officer Harris testified that he is a 16-year veteran police officer.  When he arrived at the scene to assist, he noted that an elderly white male, later

4

identified as Mr. Gelardi, approached him to report that he recovered drugs from the street. Officer Harris walked with Mr. Gelardi to the vehicle repair shop office and retrieved suspected narcotics and a needle. Officer Harris took the items and put them in the "suspect's satchel." Officer Harris was the officer who removed and seized the gun from Rocklage-Dompierre during the scuffle.

Mr. Gelardi testified that he did not see the accident, but he heard a crash outside Bates Street Motors where he worked. He went outside and saw a man on the ground. When questioned by defense counsel, the witness did not recall many of the events that occurred on September 15, 2021, and, about his involvement. On direct examination, he admitted that his memory may be impaired by a lifetime of smoking "weed." Mr. Gelardi also testified with skepticism about whether he was the person depicted in the police video footage who contacted police. He claimed that he did not recall making a statement to the police about these events.

## DISCUSSION

"A traffic stop is considered a seizure for Fourth Amendment purposes." *United States v. Guevara*, 731 F.3d 824, 827 (8th Cir. 2013); *United States v. Riley*, 684 F.3d 758, 762 (8th Cir. 2012). To justify the seizure, the stop must be "supported by either probable cause or an articulable and reasonable suspicion that a traffic violation has occurred," and the police must "objectively ha[ve] a reasonable basis for believing that the driver has breached a traffic law." *United States v. Washington*, 455 F.3d 824, 826 (8th Cir. 2006). The Eighth Circuit has repeatedly held that "[a] traffic violation—however minor—creates probable cause to stop the driver of a vehicle." *United States v. Wright*, 512 F.3d 466, 471 (8th Cir. 2008) (quoting *United States v. Bloomfield*, 40 F.3d 910, 915 (8th Cir. 1994) (en banc)); *United States v. Fuse*, 391 F.3d 924, 927 (8th Cir. 2004). The United States bears the burden of establishing that probable

5

cause existed. *United States v. Andrews*, 454 F.3d 919, 922 (8th Cir. 2006). The fact that the officers might also have suspected that the subjects inside a vehicle were up to something does not invalidate a traffic stop. *United States v. Cummins,* 920 F.2d 498 (8th Cir. 1990), *cert. denied,* 502 U.S. 962 (1991)*; see also Loch v. City of Litchfield*, 689 F.3d 961, 966 (8th Cir. 2012) ("An act taken based on a mistaken perception or belief, if objectively reasonable, does not violate the Fourth Amendment.").[4]

Officers Gregston and Dedakovic observed the motorcycle driver commit several traffic violations on a heavily trafficked roadway, including speeding, improper lane usage, and operating a moving vehicle that lacked license plates. Each one of these violations established the probable cause to attempt a traffic stop. *See United States v. Chartier*, 772 F.3d 539, 543 (8th Cir. 2014) ("If there is an 'articulable and reasonable suspicion that a motorist is unlicensed or that [a motor vehicle] is not registered,' a traffic stop on that basis is not unreasonable under the Fourth Amendment") (quoting *Delaware v. Prouse*, 440 U.S. 648, 663 (1979)).

Rocklage-Dompierre continued to drive recklessly and did not comply with an attempted traffic stop after the pursuit. The protections of the Fourth Amendment do not apply to such encounters. "A police officer may make a seizure by a show of authority and without the use of physical force, but there is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned." *Brendlin v. California,* 551 U.S. 249, 254 (2007); *see also United States v. Slaughter*, No. 1:10CR84

---

[4] The Government argues in its Response that SLMPD officers conducted a valid investigatory *Terry* stop and detention, but this claim does not track the evidence presented at the hearing. *See Terry v. Ohio*, 392 U.S. 1 (1968). Officer Gregston testified that the motorcycle was spray-painted green, which may be one particularized and objective fact leading to the reasonable suspicion for a *Terry* stop in a neighborhood where motorcycle thefts were frequent. Officer Gregston also saw that the motorcycle lacked license plates. This fact created the probable cause for the traffic stop.

SNLJ, 2010 WL 4366539 at *3 (E.D. Mo. Oct. 28, 2010) (adopting report and recommendation of magistrate judge and noting that an initial attempted seizure is not an actionable violation of the Fourth Amendment and later actual stop was supported by reasonable suspicion after a car and foot chase). The holding in *Brendlin*, and caselaw in this district applies here. No seizure occurred as a result of the attempted traffic stop.

Because there was an objectively reasonable basis for SLMPD officers to believe there was probable cause to arrest Rocklage-Dompierre for felony fleeing, his arguments about an unconstitutional search of his person and body bag are not well founded. The Eighth Circuit has opined that "[a] warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause." *United States v. Finley*, 56 F.4th 1159, 1165 (8th Cir. 2023) (quoting *Royster v. Nichols*, 698 F.3d 681, 687-88 (8th Cir. 2012)) (citation omitted). Probable cause exists when the totality of the circumstances at the time of the arrest "[is] sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Brown v. City of St. Louis*, 40 F.4th 895, 900 (8th Cir. 2022) (citation omitted); s*ee also Bell v. Neukirch*, 979 F.3d 594, 603 (8th Cir. 2020) ("There must be a 'fair probability' or a 'substantial chance' that the person seized has committed an offense." (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13, 246, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). The existence of probable cause "is determined from 'the standpoint of an objectively reasonable police officer,'" not the defendant. *Walz v. Randall*, 2 F.4th 1091, 1100 (8th Cir. 2021) (quoting *District of Columbia v. Wesby*, ––– U.S. –––, 138 S. Ct. 577, 586, 199 L.Ed.2d 453 (2018)). The officers did not need to state directly to the defendant that he was under arrest where their actions clearly conveyed their intentions, and which resulted in his actual submission. *Brendlin*, 551 U.S. at 254.

Moreover, a search warrant was not required after the defendant's valid arrest, given

7

that at least two warrant-requirement exceptions apply. Generally, a warrantless seizure of an item "is per se unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions." *United States v. Lewis*, 864 F.3d 937, 943 (8th Cir. 2017) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 474 (1971)); *United States v. Harris*, 747 F.3d 1013, 1016 (8th Cir. 2014).

First, Rocklage-Dompierre was searched incident to his valid arrest. "Among the exceptions to the [search] warrant requirement is a search incident to a lawful arrest." *Arizona v. Gant*, 556 U.S. 332, 338 (2009). Such a search may include the arrestee's person to remove weapons and seize evidence to prevent its concealment or destruction. *Id.* at 339. This exception should apply to these facts regardless of whether the defendant was handcuffed. At least one officer present had information that the defendant possessed suspected narcotics and a needle that were found on the street. He also possessed a firearm after felony fleeing. He resisted by biting an officer and moving away from them. Accordingly, officers could search his property to catalogue its contents and to look for items of contraband and dangerous instrumentalities within. The search of the backpack, compartments and its content were lawful.

Second, the plain-view exception applies here. This doctrine requires the government to show "(1) the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed, (2) the object's incriminating character is immediately apparent, and (3) the officer has a lawful right of access to the object itself." *Lewis*, 846 F.3d at 943; *United States v. Vinson*, 805 F.3d 1150, 1152 (8th Cir. 2015); *see generally Horton v. California*, 496 U.S. 128, 133-37 (1990). In *Lewis*, detectives entered the backroom office of a tattoo parlor, bypassing the empty reception desk, and encountered the defendant while looking for someone else. They noticed a handgun on a shelf and seized it to determine whether it was

8

loaded.  The defendant revealed that he was a convicted felon, and detectives left with the gun and brought charges against him.  The defendant moved to suppress the evidence on the basis that his Fourth Amendment rights were violated.  *Id*.  The government countered that the plain-view doctrine allowed the search and, alternatively, the seizure was valid based on concerns for officer safety.  The Court rejected the government's argument on the second prong—that the object's incriminating character was immediately apparent.  The Court further rejected the notion that detectives could seize the firearm as a reasonable caution for officer safety because they did not suspect that criminal activity was afoot.  *Id*.

Here, SLMPD officers were lawfully present on the streets as they were pursuing the motorcycle and then responding to the crash scene.  They had probable cause that criminal activity was afoot.  This satisfies the second prong of the doctrine.  Defendant also posed a potential danger, given his actions leading up to his arrest.  His reckless behavior and flight rendered the firearm incriminating even though the defendant's criminal history was not yet known.  "This court agrees with the standard articulated by the Sixth Circuit: 'a police officer who discovers a weapon in plain view may at least temporarily seize that weapon if a reasonable officer would believe, based on specific and articulable facts, that the weapon poses an immediate threat to officer or public safety.'"  *Lewis* at 946 (quoting *United States v. Bishop*, 338 F.3d 623, 628 (6th Cir. 2003)).  Defendant struggled against officers despite being handcuffed.  Bystanders were nearby.  Officer Gregston described the scene as a little chaotic.  The circumstances involved potential ongoing danger.  Given the totality of the circumstances, including the presence of a gun combined with the recent felony fleeing and continued resistance, Rocklage-Dompierre's actions created an exigency which formed an objectively reasonable basis for officers to search him and his body bag.  As a result, they could seize the

9

firearm in plain view and contraband found inside the body bag.  This point should be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant's motion to suppress evidence (ECF No. 66) be **DENIED**.

**IT IS HEREBY ORDERED** that at the direction of United States District Judge Matthew T. Schelp this matter is set for trial on **March 9, 2026,** at **9:00 a.m.**

The parties are advised that they have fourteen (14) days to file written objections to this report and recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to timely file objections may result in the waiver of the right to appeal questions of fact.  *Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990).

/s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE

Dated this 13th day of January, 2026.