**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:22-cr-00070-MTS/NCC |
| | ) | |
| DAVID ROCKLAGE-DOMPIERRE, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM AND ORDER</u>**

The Court has conducted a de novo review of the entire record and will overrule Defendant

David Rocklage-Dompierre's objections, incorporate and adopt United States Magistrate Judge

Noelle C. Collins' report and recommendation, and deny Defendant's motion to suppress.

**I.      Background**

On February 9, 2022, a grand jury indicted Defendant on three counts: 1) possession with

the intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1);  2) possession

of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and 3)

one count of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Defendant has

filed a Motion to Suppress Evidence, Doc. [66], wherein he argues that the Court should suppress

all evidence seized in connection with his arrest. The Court referred Defendant's Motion to United

States Magistrate Judge Noelle C. Collins. *See* 28 U.S.C. § 636(b). On August 6, 2025, Judge

Collins held an evidentiary hearing on the matter. Defendant and the Government subsequently

filed post-hearing briefs. After taking the matters under submission, Judge Collins issued a Report

and Recommendation recommending denial of the Motion. Doc. [103]. Defendant filed Objections

to Judge Collins' Report and Recommendation, Doc. [106], and a Response was filed by the Government, Doc. [110].  The matter is now ripe for ruling.

## II.    Standard

When a party objects to a magistrate judge's report and recommendation, the district judge must conduct a de novo review of the portions of the report, findings, or recommendations to which the party objected. *See* 28 U.S.C. § 636(b)(1)(c) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (citing 28 U.S.C. § 636(b)(1)). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions.").

## III.    Findings of Fact

Defendant has no objection to the Findings of Fact included in the Report and Recommendation. Upon review, the Court modifies, adopts, and incorporates Judge Collins' factual findings with its own.[1]

Defendant fled from police officers, Gregston and Dedakovic, when they initiated a valid traffic stop after noticing that the green, spray-painted motorcycle[2] Defendant was riding did not have license plates. He fled from the police officers at a high rate of speed, driving down the center lane of the street at times, thus committing traffic violations. The officers disengaged rather than

---

[1] This includes a modification as to the sequence of events leading up to and the removal of Defendant's backpack.
[2] Officer Gregston testified that they observe a lot of stolen motorcycles in the area they were patrolling and that stolen motorcycles are often spray-painted and have no license plates. Doc. [91] at 17.

continue a risky pursuit, but they continued to travel the route taken by Defendant. A few minutes after the initial pursuit, they heard from police dispatch that the motorcycle had crashed, side-swiping another vehicle in the process. When police officers Gregston and Dedakovic arrived at the scene, they approached Defendant to check on him and to place him under arrest for felony fleeing. They saw Defendant's green motorcycle on its side in the street. Defendant was wearing a backpack, appeared injured, and was seated on the ground "blading" or leaning his body to the right toward the ground. At that time, police officers Harris and Blackmon arrived on scene.

As the police officers were trying to set Defendant upright on the ground, Defendant was twisting and continued blading to his right. As this was happening, Officer Blackmon noticed a firearm tucked into Defendant's waistband on the right side and called out to the other officers that Defendant had a firearm. Doc. [91] at 25-26; (*See* Gov't Exh. 4 at 1:46). When the police officers attempted to retrieve it, Defendant resisted and would not let go of the gun. Officers can be heard telling Defendant to "let the gun go" multiple times. Doc. [91] at 46; (*See* Gov't Exh. 5 at 2:16). At this point, a police officer deployed a taser, but Defendant continued to squirm on the ground while the police officers attempted to retrieve the firearm and handcuff him. During the scuffle, Defendant bit Officer Dedakovic's forearm drawing blood.

When Defendant was finally handcuffed, the police officers attempted to lift him to a sitting position. Officer Gregston began looking through Defendant's partially opened backpack while it was still on Defendant's shoulders. (*See* Gov't Exh. 4 at 3:33). Officer Gregston testified at the evidentiary hearing that he was focused on taking the backpack off Defendant's back because "he kept trying to lay back, so I [didn't] know if there's another firearm or something in there." Doc. [91] at 27-28. Officer Gregston then cut the backpack off Defendant and set it on the curb. (*See* Gov't Exh. 4 at 4:00). Officer Gregston proceeded to briefly look through the opened backpack

3

when he saw an open, tan coin purse that appeared to contain a clear plastic bag of narcotics. (*See* Gov't Exh. 4 at 4:12). Officer Gregston then moved the backpack to the patrol vehicle.[3] Meanwhile, Officer Dedakovic escorted Defendant to sit down on a short flight of stairs leading to a house. Officer Dedakovic and another police officer then searched Defendant's jacket and clothing. (*See* Gov't Exh. 5 at 5:00).

## IV.   Discussion

Defendant objects to Judge Collins' Report and Recommendation claiming Defendant's Fourth Amendment rights were violated when police officers searched his backpack and tan coin purse without a search warrant. Defendant argues there were no safety concerns or exigent circumstances permitting the police officers to conduct a warrantless search of Defendant's backpack or tan coin purse because, "[a]ny threat the defendant allegedly posed to the officers had been nullified when he was placed in handcuffs and separated from his body bag. He had no control of the bag nor access to it. He was under arrest and in the custody of the police officers." Doc. [106] at 7. Defendant also argues that the search incident to arrest exception to the warrant requirement does not apply because he was handcuffed, in police custody, had no control of the bag, and was not within reaching distance of the bag at the time of the search.

### A.  Search Incident to Arrest

As an initial matter, the Court agrees with Judge Collins' findings that based upon the totality of the circumstances, there was an objectively reasonable basis for the police officers to believe there was probable cause to arrest Defendant for felony fleeing. Probable cause exists when the totality of the circumstances at the time of the arrest "[is] sufficient to lead a reasonable person

---

[3] *See also* Doc. [103] at 1, 2 n. 1; Doc. [91] at 62-65, concerning suspected narcotics and a needle found by a bystander on the street and given to Officer Harris.

to believe that the defendant has committed or is committing an offense." *Brown v. City of St. Louis*, 40 F.4th 895, 900 (8th Cir. 2022) (citation omitted). Here, Defendant fled from police officers when they initiated a traffic stop of his green, spray-painted motorcycle because it did not have license plates. Officer Gregston testified at the evidentiary hearing that there are a lot of stolen motorcycles in the area where they were patrolling, and that stolen motorcycles are often spray-painted and have no license plates. Doc. [91] at 17. In sum, Defendant recklessly fled from police officers at a high rate of speed down the center lane of a busy road, resulting in a motorcycle crash. Defendant then resisted arrest while a concealed firearm was in his waistband. And all the while, his partially opened backpack was on his shoulders.

This Court also agrees with Judge Collins' determination that the police officers conducted a search incident to the arrest of Defendant. Search incident to arrest is "among the exceptions to the warrant requirement." *Arizona v. Gant*, 556 U.S. 332, 338 (2009). "The exception derives from interests of officer safety and evidence preservation." *Id*. "[I]t is entirely reasonable for [law enforcement] to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items." *Chimel v. California*, 395 U.S. 752, 763 (1969).

Contrary to Defendant's arguments, "[w]hether an officer has exclusive control of a seized item does not, … necessarily determine whether the item remains in 'the area from within which [the arrestee] *might* gain possession of a weapon or destructible evidence.'" *United States v. Perdoma*, 621 F.3d 745, 751 (8th Cir. 2010) (quoting *Chimel*, 395 U.S. at 763 (emphasis added)). This can be so even if a defendant is restrained. *Id*. at 751-53. Although Defendant was handcuffed when Officer Gregston cut the backpack off his shoulders, the backpack was within the area of Defendant's immediate control, and the search was justified by both the concern for officer safety

5

as well as the need to collect evidence.

### B. Exigency

This Court also agrees with Judge Collins' determination that the exigent circumstances exception to the warrant requirement justified the search of Defendant and his backpack.[4] "Exigent circumstances exist where [officers] have a legitimate concern for themselves or others … [and] the analysis is an objective one focusing on what a reasonable, experienced [officer] would believe." *United States v. Kuenstler,* 325 F.3d 1015, 1021 (8th Cir. 2003) (internal quotations omitted). As stated in the Report and Recommendation, "[g]iven the totality of the circumstances, including the presence of a gun combined with the recent felony fleeing and continued resistance, [Defendant's] actions created an exigency which formed an objectively reasonable basis for officers to search him and his body bag." Doc. [103] at 9. Defendant recklessly fled from police officers on a motorcycle at a high rate of speed and created a chaotic scene by resisting arrest and attempting to conceal a firearm, posing a safety concern for those on the road as well as the multiple bystanders and police officers.

### V.    Conclusion

The Court has conducted a de novo review of all matters related to Defendant's Motion and Objections, including a thorough review of the transcript of the evidentiary hearing as well as body and dash camera video of the events that transpired. After careful consideration, the Court will adopt, incorporate, and sustain Judge Collins' Report and Recommendation, overrule Defendant's objections and deny his Motion.

Accordingly,

**IT IS HEREBY ORDERED** that the Report and Recommendation of United States

---

[4] Defendant does not object to Judge Collins' findings as to the plain view doctrine.

Magistrate Judge Noelle C. Collins, Doc. [103], is **SUSTAINED, ADOPTED, AND INCORPORATED**, as modified herein.

IT IS FURTHER ORDERED that Defendant's Objections to the Report and Recommendation, Doc. [106], are **OVERRULED**.

IT IS FINALLY ORDERED that Defendant's Motion to Suppress, Doc. [66], is **DENIED**.

Dated this 17th day of March, 2026

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE